IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SANTANDER BANK, NA,        *

     Plaintiff,           *

                                   Civil Action No. RDB-17-00374

     v.                 *

MARK GAVER, *et al.*,        *

     Defendant.        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM ORDER

Plaintiff Santander Bank, N.A. ("Santander" or "Plaintiff") brings this action against Defendants Mark Gaver ("Mr. Gaver"), his companies Gaver Properties, LLC, Gaver Consulting, LLC, Fawley Family Partnership, LLC, and Pelican Colony Partnership, LLC (collectively, the "LLC Defendants"), as well as his former spouse, Donna Gaver ("Ms. Gaver"). (Am. Compl., ECF No. 39.) This case follows federal criminal proceedings in which Mr. Gaver was accused of perpetuating a fraudulent scheme to obtain a $50 million line of credit from Santander by submitting false financial statements. On August 1, 2018 Mr. Gaver was convicted of eight counts of bank fraud in violation of 18 U.S.C. § 1344 and two counts of money laundering in violation of 18 U.S.C. § 1957. (Jury Verdict, ECF No. 58; Judgment, ECF No. 106, *United States v. Gaver*, RDB-17-640.) Now, Santander brings this civil action to recuperate an outstanding loan balance of nearly $50 million from Gaver, his affiliated entities, and Ms. Gaver. (ECF No. 91-1, at ¶ 112.)

Currently pending before this Court is Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 91); Plaintiff's Motion for Default Judgment against

Defendants Mark Gaver, Gaver Properties, LLC, Gaver Consulting, LLC, Fawley Family Partnership, LLC, and Pelican Colony Partnership, LLC. (ECF No. 96); and Defendant Mark Gaver's *pro se* Motion for Contempt of Court against Ms. Gaver. (ECF No. 101). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 91) is GRANTED; Plaintiff's Motion for Default Judgment (ECF No. 96) is DENIED as MOOT and WITHOUT PREJUDICE; the Clerk's Entries of Default (ECF Nos. 69, 73) are SET ASIDE; and Defendant Mark Gaver's Motion for Contempt of Court (ECF No. 101) is DENIED.

## BACKGROUND

This case arises from Santander's contention that Defendant Mark Gaver submitted fraudulent financial statements to obtain a credit line for his company, Gaver Technologies ("GTI"). In 2009, Mr. Gaver allegedly obtained an $18.5 million line of credit for GTI, secured by GTI's business assets. (Second Am. Compl. at ¶¶ 1, 18, ECF No. 91-1.) Over the next several years, he requested and obtained increases to this credit line. (*Id.*) These transactions were documented in loan agreements and notes entered into by the parties. (*Id.* at ¶¶ 28-35.) In March 2016, Santander increased the credit line to $50 million, as documented in an Eighth Amended and Restated Loan Agreement dated March 15, 2016 (the "Loan Agreement") and a Ninth Amended and Restated Revolving Lice of Credit Note dated as of March 15, 2016 (the "2016 Note"). (ECF No. 91-1, at 35.)

Mr. Gaver obtained the line of credit and subsequent increases to the line of credit by submitting forged financial statements, designed to appear as though they had been prepared

by Grant Thornton LLP, a recognized and respected accounting firm. (*Id.* at ¶ 2.) The purportedly audited financial statements grossly inflated GTI's financial health, showing strong revenue growth and substantial accounts receivable from contracts with federal agencies. (*Id.*) For example, GTI's 2008 financial statements showed revenue of $88.6 million and accounts receivable of $28 million. (*Id.* at ¶ 3.) In reality, GTI only had revenues of $5.8 million and accounts receivable of $530,000.00. (*Id.*) Santander relied on the financial statements' representations to fix the size of the line of credit. (*Id.* at ¶¶ 4.) Because Santander was willing to extend credit up to 80% of the assets securing the loan, GTI's representations about its accounts receivable balance dictated the size of the line of credit Santander was willing to offer. (*Id.* at ¶ 22.)

The revolving line of credit funded GTI's operating account and payroll account located at Santander. (*Id.* at ¶ 37.) The funds from these accounts were also used to make payments against the credit line; at the end of each day, the accounts were "swept" by Santander to pay down the line of credit and achieve a zero balance. (*Id.* at ¶ 37.) As the sole shareholder and CEO of GTI, Mr. Gaver allegedly exercised complete control over the operations of the company, including control over GTI's operating account and payroll account. (*Id.* at ¶ 41.) From July 2013 to November 2016, Mr. Gaver allegedly caused GTI to draw on the GTI operating account at Santander by issuing checks to himself totaling $2,919,000.00. (*Id.* at ¶ 43.) At various other times, Mr. Gaver allegedly caused GTI to issue checks to corporate entities which he owned in whole or in part, namely: Gaver Properties, Gaver Consulting, Fawley Family Partnership and Pelican Colony Partnership (the "LLC Defendants"). (*Id.* at ¶¶ 8-11; 45-51.)

Donna Gaver allegedly benefitted from her former husband's scheme and used divorce proceedings to obtain additional funds owed to Santander. From 2009 to 2016, payments from GTI represented the vast majority of the Gaver family's income. (ECF No. 64.) In 2010 and 2011, Ms. Gaver was listed as an employee of GTI and allegedly received payments totaling $362,500 directly from the company. (*Id.*) In July 2015, Ms. Gaver filed a petition for divorce in the Circuit Court for Lee County, Florida, resulting in a "bitter and contentious" divorce proceeding. (*Id.* at ¶ 52.) Despite learning of the fraud by no later than December 2016, Gaver allegedly used the divorce proceedings to obtain control over the payments from GTI and property purchased using payments from GTI. (*Id.* at ¶ 68.) Beginning in December 2015, Ms. Gaver allegedly arranged to receive payments from GTI, Gaver Properties, and Fawley Family Partnership, LLC totaling more than $1 million. (*Id.* at ¶¶ 72-76.) In some cases, the payments were allegedly made to an escrow fund used in Ms. Gaver's divorce proceedings (*Id.* at ¶¶ 72-75.) On other occasions, funds were allegedly transferred directly to a bank account in her name (*Id.* at ¶ 76.)

Santander claims that about $50 million remains outstanding on the loan. (*Id.* at ¶ 112.) On February 8, 2017, the bank commenced this lawsuit against Mark Gaver and his affiliated entities,[1] alleging that he is personally liable for the outstanding loan balance. (ECF No. 1.) On July 5, 2017, Mr. Gaver, acting *pro se*, timely filed a Motion to Dismiss (ECF No. 36.) On week later, Plaintiff served Mr. Gaver with an Amended Complaint. (ECF Nos. 39, 61.) Once again, acting *pro se*, Mr. Gaver timely filed a Motion to Dismiss the Amended Complaint, which

---

[1] Because Santander believes that GTI is insolvent, it has not sued this entity. (ECF No. 91-1, at ¶ 4.)

Judge J. Frederick Motz of this Court subsequently denied on September 28, 2017.[2] (ECF Nos. 54, 59.) Following these Motions, neither Mr. Gaver nor the LLC Defendants filed an Answer or otherwise responded to the Complaint.

On October 10, 2017, Plaintiff filed four separate Motions for Clerk's Entry of Default against each LLC Defendant for failing to respond to the First Amended Complaint. (ECF Nos. 64, 65, 66, 67.) On November 14, 2017, Plaintiff filed a Motion for Clerk's Entry of Default against Mr. Gaver on this same basis. (ECF No. 71.) On November 16, 2017, default was entered against Mr. Gaver for failing to respond to the First Amended Complaint. (ECF No. 73.) In separate Motions, both Mr. Gaver and Gaver Properties, LLC moved to set aside the entries of default against them. (ECF Nos. 68, 81.) This Court denied both motions in separate Memorandum Orders (ECF Nos. 75, 90.)

On April 16, 2018 Santander filed a Motion for Leave to File Second Amended Complaint, which would add actual and constructive fraudulent conveyance claims against Ms. Gaver pursuant to the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), Md. Code Ann., Comm. Law § 15-201, *et seq.*, and the Florida Fraudulent Transfer Act ("FFTA"), Fla. Stat. § 726.01, *et seq.* (ECF Nos. 91, 91-2.) Only Ms. Gaver opposes this Motion. (ECF No. 93.) On June 15, 2018 Santander moved for a Default Judgment against Mr. Gaver and the LLC Defendants based on their failure to plead or otherwise defend in response to the First Amended Complaint. (ECF No. 96, at 4.) Defendant Gaver Properties, LLC opposes the Motion for Default Judgment. (ECF No. 97.) On August 1, 2018 a jury convicted Mr. Gaver of eight counts of bank fraud and two counts of engaging in monetary transactions in property

---

[2] On October 16, 2017, this case was reassigned from Judge J. Frederick Motz to the undersigned.

derived from specified unlawful activity. *See United States v. Mark Gaver*, RDB-17-0640. From his prison cell, Mr. Gaver, has filed a handwritten Motion for Contempt of Court against Donna Gaver and her Florida divorce attorney, Herman Tarnow. (ECF No. 101.) Ms. Gaver opposes the Motion. (ECF No. 102.)

## STANDARD OF REVIEW

A plaintiff may amend his or her complaint once as a matter of course before a responsive pleading is served, or within twenty-one days of service of a responsive pleading or motion under Federal Rule of Civil Procedure 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a). While Rule 15(a) requires that leave "shall be freely given when justice so requires," *id.*, a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986). As this Court has repeatedly explained, an amendment is insufficient or frivolous if it would not survive a motion to dismiss. *See, e.g.*, *Whitaker v. Ciena Corp.*, RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018) (citing *Tawaab v. Virginia Linen Service, Inc.*, 729 F. Supp. 2d 757, 770 (D. Md. 2010).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on bald accusations or mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, a court is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date,

place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). As the United States Court of Appeals for the Fourth Circuit stated in *United States ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451 (4th Cir. 2013), the aims of Rule 9(b) are to provide notice to defendants of their alleged misconduct, prevent frivolous suits, eliminate fraud actions where all the facts are learned after discovery, and protect defendants from harm to their goodwill and reputation. 707 F.3d at 456 (citation omitted).

## ANALYSIS

### I. Plaintiff's Motion for Leave to File Second Amended Complaint is Granted.

Santander seeks to file a Second Amended Complaint to assert two new claims against Ms. Gaver: an actual fraudulent conveyance claim (Count VIII) and a constructive fraudulent conveyance claim (Count IX). Ms. Gaver argues that Santander's amendment is the product of undue delay, bad faith, and is futile. Specifically, Ms. Gaver claims that Santander has long been aware of the allegations it seeks to add to support its new fraud claims and that its delay tactics constitute bad faith. (ECF No. 93, at 2.) Additionally, Ms. Gaver argues that Santander has failed to satisfy the rigorous pleading standards of Rule 9(b) because it has merely parroted the elements of the fraudulent conveyance cause of action without providing sufficient factual support. (*Id.* at 4.) She further argues that the fraudulent conveyance claims are futile because Santander has not obtained a money judgment against Gaver Properties or Fawley Family Partnership ("FFP"). (*Id.*) Santander replies that it has not acted in bad faith because the new fraudulent conveyance claims against Ms. Gaver are based on facts which came to light after it filed its First Amended Complaint on July 10, 2017. (ECF No. 95, at 2.) The bank further

argues that its new claims would not be futile, as it has included sufficient factual allegations to survive a motion to dismiss and need not obtain a money judgment to bring a fraudulent conveyance claim. (*Id.* at 3-4.)

## A. Santander has not acted in bad faith.

Ms. Gaver seeks to impute bad faith upon Santander, citing only the fact that the bank was aware of the divorce proceedings before the First Amended Complaint was filed in July 2017. (ECF No. 93, at 2.) Delay alone, absent an "obvious design by dilatoriness to harass the opponent" cannot amount to bad faith. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). In this case, Santander has not exhibited bad faith by waiting to bring fraud claims at this juncture. The Second Amended Complaint contains new allegations that GTI transferred $300,000.00 to Ms. Gaver between July 2017 and October 2017. (*Id.* at ¶ 76.) As these transfers allegedly occurred after the First Amended Complaint was filed in July 2017, Santander could not have included them in its prior amendment. Santander further explains that it waited to bring the new fraud claims, which are subject to heighted pleading requirements under Rule 9(b), until it could obtain additional information to support them. The bank explains that the details of these transactions were obscured from view while the Florida divorce proceedings were on-going. Only after a final judgment was entered on October 26, 2017, could Santander use the public docket to obtain the details of these transactions.

## B. Santander has adequately pled claims of actual and constructive fraudulent conveyance.

Ms. Gaver argues that Santander has failed to state a claim because the proposed Complaint lacks sufficient factual detail and hews too closely to the elements of a fraudulent

conveyance cause of action. (ECF No. 93, at 3-4.) To sufficiently allege fraud pursuant to the dictates of Rule 9(b), the plaintiff must set out in detail the "circumstances constituting fraud" but "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To state a claim of fraudulent conveyance pursuant to the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), Md. Code Ann., Comm. Law § 15-201, *et seq.*,[3] the plaintiff must allege that "a creditor-debtor relationship exists and that the debtor has fraudulently transferred assets." *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 502 (D. Md. 2002) (quoting *Dixon v. Bennett*, 72 Md. App. 620, 531 A.2d 1318, 1320 n.2 (1987). Pursuant to the MUFCA, "every conveyance made . . . with actual intent, as distinguished from intent presumed in law to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors." Md. Code Ann., Com. Law § 15-207. Additionally, "[e]very conveyance made . . . without fair consideration when the person who makes the conveyance . . . intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." *Id.* at § 15-206.

A plaintiff sufficiently pleads a fraudulent conveyance claim under the MUFCA by describing the transactions which allegedly constitute a fraudulent conveyance, identifying the participants in those transactions, and generally alleging that the transfers were made without fair consideration. *See Nat'l Mortg. Warehouse*, 201 F. Supp. 2d at 505 (finding that plaintiff-creditor had sufficiently pled a fraudulent conveyance claim against the wife of the debtor's agent because it described the allegedly fraudulent transactions, identified the participants to

---

[3] The following analysis applies equally to the Florida Uniform Fraudulent Conveyance Act, which does not differ from the Maryland statute in any material respect for the purposes of this motion. *See* Fla. Stat. § 726.105.

the transactions, alleged that the transfers were without fair consideration, and indicated that the debtor was rendered unable to pay what it owed to its creditor); *Fenzel v. Group2 Software, LLC*, DKC-13-0379, 2014 WL 2882956, at *2-3 (D. Md. June 24, 2014) (finding that plaintiff-creditor satisfied the requirements of Rule 9(b) by identifying the participants, alleging that the transfers were without fair consideration, and indicating that the transfers were made to hinder, delay, or defraud the plaintiff by making his ownership interest in the defendant-debtor worthless and rendering the debtor unable to pay its debts to the plaintiff-creditor).

In this case, the Second Amended Complaint alleges that Ms. Gaver obtained fraudulent transfers on several occasions. (ECF No. 91-1, at ¶¶ 72-76.) The Second Amended Complaint specifies the dates on which the alleged transfers occurred (ranging from December 10, 2015 to October 2017) and the parties to the transfers (FFP, Graver Properties, GTI, and Ms. Gaver). Santander further alleges that she received these funds for "less than reasonably equivalent value or fair consideration." (*Id.* at ¶ 116, 122.) Because these allegations state with particularity the circumstances giving rise to the alleged fraud, the fraudulent conveyance claims are not futile. Moreover, while Santander only generally alleges that these transfers were made with "intent to hinder, delay or defraud creditors," these allegations suffice at this stage, as "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Santander additionally argues that the fraudulent conveyance claims are futile because Santander has not yet obtained money judgments against Gaver Properties or Fawley Family Partnership. (ECF No. 93, at 4.) Contrary to the allegations of the proposed Second Amended Complaint, she argues that Gaver Property and FFP are not "liable for aiding and abetting"

the fraud against Santander because Santander has not obtained a money judgment against these entities. (ECF No. 91-1, at ¶¶ 128, 135.) Santander, however, is not required to plead that it has obtained a money judgment to bring these claims. Under Maryland law, any creditor may bring a fraudulent conveyance claim to protect its loan. Its claim to the transferred assets need not have matured, and certainly need not have ripened into a money judgment. *See In re Int'l Loan Network, Inc.*, 160 B.R. 1, 18 (Bankr. D.D.C. 1993) ("Under Maryland law . . . any creditor in existence at the time of the challenged conveyance may invoke the Maryland Fraudulent Conveyance Act even though their claim has not yet matured."). Accordingly, Santander's fraudulent conveyance claims are not futile. As Santander has neither acted in bad faith nor asserted futile claims, leave to file a Second Amended Complaint is GRANTED.

## II.     Plaintiff's Motion for Default Judgment is Denied as Moot.

Two months after filing its Motion for Leave to File Second Amended Complaint, Santander has filed a Motion seeking a default judgment against Mark Gaver and the LLC Defendants in the amount of $52,946,189.98 based on their failure to respond to the Amended Complaint. An amended complaint supersedes the prior operative complaint, rendering it of no legal effect. *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001). Accordingly, the filing of an amended complaint renders pending motions for default judgment moot and requires previous entries of default to be set aside. *See, e.g.*, *Allstate Ins. Co. v. Yadgarov*, 11-CV-6187 (PKC)(VMS), 2014 WL 860019, at *8 n.11 (E.D.N.Y. March 5, 2014) (collecting cases from across the country). Because this Court is granting Plaintiff leave to file a Second Amended Complaint, the Motion for Default judgment is DENIED as MOOT and WITHOUT PREJUDICE. Furthermore, the clerk's entries of default (ECF Nos. 69, 73) are

SET ASIDE.  Should Defendants fail their obligation to respond to the Second Amended Complaint, Santander may once again seek an entry of default and a default judgment.

### III.  Defendant Mark Gaver's Motion for Contempt is Denied.

Mark Gaver seeks an Order holding in contempt of court his former spouse and co-defendant, Donna Gaver, as well as her Florida divorce attorney, Herman Tarnow.  (ECF No. 101, at 1.)  He argues that Ms. Gaver, with the assistance of Mr. Tarnow, violated this Court's Temporary Restraining Order ("TRO") of February 17, 2017 by using her divorce proceedings to dissipate assets held by the LLC Defendants.  (*Id.* at 2-3.)  He requests various forms of relief "to the benefit of Santander," including a hearing requiring the attendance of Ms. Gaver and Mr. Tarnow; an order directing Ms. Gaver and Mr. Tarnow to produce certain documents; and the forfeiture of all assets related to the fraud he allegedly committed.  (*Id.* at 5.)

Mr. Gaver's patently vindictive Motion, designed to benefit his adversary at his ex-wife's expense, must be denied.  To establish civil contempt, Mr. Gaver "must establish each of the following elements by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's 'favor'; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that movant suffered harm as a result." *Schwartz v. Rent-A-Wreck of America*, 261 F. Supp. 3d 607, 612 (D. Md. 2017) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

In this case, Mr. Gaver cannot seek a contempt order because the TRO he desires to enforce was not entered in his favor.  On February 17, 2017 this Court entered a TRO temporarily enjoining Mr. Gaver and Pelican Colony Partnership, LLC from "transferring or

otherwise dissipating monies received from Gaver Technologies" and "transferring or otherwise dissipating monies received, directly or indirectly, from the line of credit issued by Santander." (ECF No. 7-1.) As the TRO was designed to restrain Mr. Gaver from making unlawful transfers and in no way inured to his benefit, his Motion for Contempt is DENIED.

For these reasons, it is HEREBY ORDERED this 7th day of March, 2019 that:

1. Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 91) is GRANTED;

2. Plaintiff's Motion for Default Judgment (ECF No. 96) is DENIED as MOOT and WITHOUT PREJUDICE;

3. The Clerk's Entries of Default (ECF Nos. 69, and 73) are SET ASIDE;

4. Defendant Mark Gaver's Motion for Contempt of Court (ECF No. 101) is DENIED; and

5. The Clerk of Court shall transmit a copy of this Order to counsel of record.

_____/s/_____
Richard D. Bennett
United States District Judge